UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ATLANTA HARDY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:20-cv-00662 |
|  | ) | Judge Trauger |
| GLORIA FISHER, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM

Atlanta Hardy, an inmate at the Debra K. Johnson Rehabilitation Center[1] in Nashville, Tennessee, filed a pro se civil rights action under 42 U.S.C. § 1983 (Doc. No. 1) and an application to proceed as a pauper (Doc. No. 2). The complaint is before the court for an initial review under the Prison Litigation Reform Act and the in forma pauperis statute.

### I. Application to Proceed as a Pauper

The court may authorize an inmate to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because the plaintiff's application to proceed as a pauper (Doc. No. 2) reflects that she cannot pay the filing fee in advance without undue hardship, it will be granted. The $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

### II. Initial Review

The court must dismiss the complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The court also must liberally construe pro se pleadings

---

[1] The court takes judicial notice that this facility was known as the Tennessee Prison for Women until recently. *See Debra K. Johnson Rehabilitation Center*, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/tennessee-prison-for-women (last visited Dec. 18, 2020).

and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A.  **Factual Allegations**

The plaintiff's allegations primarily concern disciplinary proceedings stemming from an incident in August 2019. For purposes of initial review, a summary of her claims, based on her allegations and the exhibits attached to the complaint, follows.

In August 2019, the plaintiff's cellmate assaulted her until two inmates broke up the altercation. (Doc. No. 1 at 2.) Associate Warden Terry Barlow ordered the plaintiff and two inmates to be taken to segregation. (*Id.* at 1–2.) The next day, Staff Investigator Roger Tidwell prepared a disciplinary report stating that the plaintiff and two inmates assaulted the cellmate. (*Id.*) The plaintiff did not receive a copy of this report, and she says failure to provide her with a copy violated TDOC policy. (*Id.* at 2.) The plaintiff's disciplinary hearing was set for September 6, and she was assigned an inmate advisor, which violated a TDOC policy providing that inmates should be "presented with a list of advisors to choose from." (*Id.*) Before the hearing, the two other inmates had their charges dismissed. (*Id.* at 3.)

On September 6, 2019, Disciplinary Hearing Officer ("DHO") David Law presided over the hearing, despite having been previously "reported and reprimanded by the chief of security for referring to the Plaintiff as a 'f*cking n*gger.'" (*Id.* at 2–3.) At the hearing, Staff Investigator Tidwell stated that the plaintiff's cellmate told him that the plaintiff assaulted her. (*Id.* at 3.) There was no other testimony. (*Id.*) DHO Law did not render a verdict at the conclusion of the hearing, and that failure violated TDOC policy. (*Id.*) On September 9, Unit Manager Jackie Wilson told the plaintiff that Law found her guilty and placed her on "Administrative Segregation (Maximum Security) with a time-served sentence." (*Id.*) This placement violated TDOC punishment

2

guidelines because the plaintiff did not have a disciplinary history for the four years preceding the incident. (*Id.*)

A prison employee told the plaintiff that Warden Gloria Fisher conspired with the defendants in this case to justify the plaintiff's administrative segregation sentence. (*Id.*) On September 21, 2019, another prison employee gave the plaintiff a copy of the hearing summary reflecting that she was actually found not guilty at the hearing.[2] (*Id.*) And although DHO Law authorized the plaintiff's sentence of time served in administrative segregation (*id.* at 3), the plaintiff has remained in administrative segregation since September 2019 (*id.* at 4–5, 11).

In administrative segregation, the plaintiff has: "very little contact and visitation with her family"; the inability to participate in "various college courses"; faulty heating and air conditioning units; been forced to waste her time researching matters related to the facts underlying this case; and the "harsh conditions" for which "administrative segregation is known." (*Id.* at 11–12.)

The plaintiff, an African American, alleges that many other inmates, including five Caucasian inmates with "far worse" disciplinary histories, have received lesser punishment for behavior "similar or worse" to her alleged behavior. (*Id.* at 4–5.) These inmates' punishments "ranged from outright dismissal to 30 days in punitive segregation." (*Id.*)

Sometime later, the plaintiff's cellmate—the person the plaintiff was charged with assaulting—was released. (*Id.* at 4.) She sent the plaintiff a letter stating, among other things, that she lied about the assault and that she admitted lying about the assault to Staff Investigator Tidwell. (*Id.*) Tidwell "essentially pressured her to remain silent about what really happened." (*Id.*)

The plaintiff filed several grievances without being released from administrative segregation. (*Id.*) She also enrolled in the "Step Down Program," which allows "rehabilitated

---

[2] Although the "Committee Decision" area of the summary is marked "N" for "Not Guilty" (Doc. No. 1-1 at 4), certain handwritten narrative portions of the summary reflect a finding of guilty (*id.* at 5, 8).

3

inmates an early release from administrative segregation." (*Id.*) On March 24, 2020, Warden Fisher removed the plaintiff before she completed the first session. (*Id.*) Through "elbow counsel," the plaintiff asked about this removal, and Fisher responded through counsel that the decision was within her discretion and that "some matters" relating to the plaintiff were under "review and investigation." (*Id.*) The plaintiff received no report regarding an investigation at that time. (*Id.*)

The plaintiff sues the prison, Warden Fisher, Associate Warden Barlow, Staff Investigator Tidwell, DHO Law, and TDOC Commissioner Tony Parker. (*Id.* at 1–2.) She asserts several due process claims: that Fisher, Barlow, Tidwell, and Law placed and kept her on administrative segregation based on a knowingly false charge (*id.* at 5–10); that Tidwell pressured her cellmate to remain silent about the truth of the assault (*id.* at 9); and that Parker denied her grievance appeal (*id.* at 11). The plaintiff also asserts that Fisher violated her equal protection rights by placing her on administrative segregation indefinitely. (*Id.* at 7.) The plaintiff requests monetary damages and the expungement of the "disciplinary infractions referenced in [the] complaint." (*Id.* at 13, 20.)

**B.    Legal Standard**

To determine if the complaint passes initial review under the applicable statutes, the court applies the Rule 12(b)(6) standard. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

4

### C. Analysis

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

#### 1. The Prison as a Defendant

In an isolated reference in the first paragraph of the complaint, the plaintiff names the prison itself as a defendant. (Doc. No. 1 at 1.) To the extent the plaintiff seeks to state a claim against the prison, she cannot do so because the prison is a building, "not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983." *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are improper defendants under Section 1983).

#### 2. Individual-Capacity Claim against Defendant Parker

The plaintiff also asserts a due process claim against TDOC Commissioner Parker for denying her grievance appeals. (Doc. No. 1 at 11.) But "the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983." *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Accordingly, the plaintiff's individual-capacity claim against Parker will be dismissed.

#### 3. Violation of TDOC Policy

The plaintiff asserts that the defendants violated TDOC policy and procedure in several ways, including by neglecting to provide her copies of disciplinary reports, not allowing her to choose an inmate advisor, and failing to announce a finding at the conclusion of her disciplinary hearing. However, inmates cannot state a Section 1983 claim based solely on the failure to follow

prison policies. *See Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)) ("Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest."). Thus, to the extent that the plaintiff's claims are premised on the failure to follow policy, they will be dismissed.

### 4. Procedural Due Process

Next, the plaintiff asserts a due process claim against the defendants for placing and keeping her on administrative segregation based on a knowingly false disciplinary charge. To state a procedural due process claim, the plaintiff "must first demonstrate that [s]he was deprived of 'life, liberty, or property' by government action." *Heard v. Caruso*, 351 F. App'x 1, 7 (6th Cir. 2009) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). Although "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)), prisoners retain a liberty interest in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The plaintiff's alleged conditions in administrative segregation, however, do not rise to this level.

First, as a general matter, "an 'increase in security classification . . . does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.'" *Williams v. Lindamood*, 526 F. App'x 559, 563 (6th Cir. 2013) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005)). Additionally, the alleged visitation restriction resulting from the plaintiff's placement in administrative segregation does not implicate a protected liberty interest. *See Bazzetta v. McGinnis*, 430 F.3d 795, 803–05 (6th Cir.

2005) (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003)) (holding that a prison's policy resulting in a permanent ban on visitation does not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause"). Nor does the plaintiff's inability to participate in educational courses. *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (collecting cases) (rejecting due process claim because "[p]risoners have no constitutional right to rehabilitation, education, or jobs"). And the plaintiff's alleged exposure to faulty heating and air systems is also not an "atypical and significant hardship." *Cf. Wilkerson*, 545 U.S. at 223–24 (finding liberty interest where inmate was prohibited from "almost all human contact," subjected to 24-hour constant light, and limited to 1 hour of exercise per day in a "small indoor room").

Second, to "implicate due process considerations," a prisoner's confinement in more restrictive conditions typically must be "prolonged or indefinite." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). Here, the plaintiff's allegations reflect that she had been in administrative segregation for nearly eleven months at the time the court received the complaint. Although "the duration of h[er] confinement, at some point, may [] give[] rise to a protected liberty interest, such that some form of review [is] constitutionally required," *see Williams*, 526 F. App'x at 563 (citing *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012)), the plaintiff's eleven-month confinement in administrative segregation is insufficient to implicate a protected liberty interest at this time. *See Harris*, 465 F. App'x at 484 (citing *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998)) (noting that 30-month segregation did not create liberty interest); *but see Harden-Bey*, 524 F.3d at 792–93 (finding that 3 years without a definite end-point may be "atypical and significant").

7

In sum, the plaintiff's alleged conditions are not "atypical and significant" such that she satisfies the threshold requirement of establishing a protected liberty interest. The plaintiff, therefore, fails to state a procedural due process claim.

### 5. Substantive Due Process

The plaintiff does not explicitly assert a due process claim that is substantive, in addition to procedural, but given her pro se status, the court will consider whether the plaintiff has stated such a claim. Even where a prisoner does not demonstrate a protected liberty interest arising from a disciplinary infraction, the prisoner can state a substantive due process claim based on an allegation that "prison officials continue to punish h[er] on the basis of [knowingly] false evidence." *Thomas v. Russell*, 202 F.3d 270, 2000 WL 32040, at *1 (6th Cir. Jan. 6, 2000); *see Cannon v. Bernstein*, No. 09-14058, 2015 WL 13741225, at *13–14 (E.D. Mich. May 26, 2015) (collecting cases for the proposition that *Thomas*'s reasoning is "well-supported by case law from various other circuits and districts around the country"), *report and recommendation adopted*, 2015 WL 5719665 (E.D. Mich. Sept. 30, 2015).

This claim is "based on an alleged abuse of governmental authority," *Thomas*, 2000 WL 32040, at *1 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)), and executive abuse of power that "shocks the conscience" is cognizable. *Lewis*, 523 U.S. at 846. This standard "sets a high bar," and "'only extreme misconduct'" will trigger substantive due process concerns. *See Jane Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932–33 (6th Cir. 2020) (citing *Lewis*, 523 U.S. at 847). However, at this early stage in the case, the plaintiff alleges a sufficiently concerning abuse of power to warrant further development to determine whether the defendants' actions satisfy the constitutional standard.

8

The plaintiff alleges that her cellmate admitted lying about the August 2019 incident to Staff Investigator Tidwell and that Tidwell "essentially pressured her to remain silent about what really happened." (Doc. No. 1 at 4.) The plaintiff also asserts that Warden Fisher conspired with the other defendants "to procure a justification to maintain [her] administrative segregation sentence." (*Id.* at 3.) These allegations, liberally construed, support an arguably non-frivolous substantive due process claim against Tidwell, Fisher, Associate Warden Barlow, and DHO Law.

### 6.    Equal Protection

The plaintiff also asserts an equal protection claim. The Equal Protection Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Bishawi*, 628 F. App'x at 344 (citing *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Thus, the plaintiff may state an equal protection claim by alleging "that (1) [s]he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017) (citing *Robinson v. Jackson*, 615 F. App'x 310, 314–15 (6th Cir. 2015)).

The plaintiff, an African American, alleges that she has been punished more harshly than five specific Caucasian prisoners with "far worse" disciplinary histories whose behavior was "similar or worse" to her alleged behavior. (Doc. No. 1 at 4–5.) The plaintiff also alleges that DHO Law, who presided over her disciplinary hearing, referred to her with a racist slur in the past. These allegations support an equal protection claim against the defendants involved in the plaintiff's alleged disparate punishment—Fisher, Barlow, Tidwell, and Law. Although the plaintiff asserts this claim against just Fisher, the court liberally construes the complaint to state a claim against all four defendants.

### 7. Official-Capacity Claims for Monetary Damages

Finally, the plaintiff brings this action against the defendants in both their individual and official capacities. (Doc. No. 1 at 1.) "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here, the defendants include the TDOC Commissioner and staff members at a TDOC-operated prison. (Doc. No. 1 at 1–2; *id.* at 2 (referring to Defendant Tidwell as a "TDOC investigator").) Accordingly, the plaintiff's official-capacity claims are essentially claims against the TDOC.

The TDOC is an "agenc[y] of the state of Tennessee" that is "entitled to Eleventh Amendment immunity from suit for damages." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted). Thus, the court will dismiss the plaintiff's request for monetary damages from the defendants in their official capacities. Because the plaintiff has stated the two constitutional claims discussed above, however, the court will not dismiss the plaintiff's request for injunctive relief regarding the expungement of her disciplinary infraction at this time.[3] *See Johnson v. CCA-Ne. Ohio Corr. Ctr. Warden*, 21 F. App'x 330, 332 (6th Cir. 2001) (citing *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979)) (recognizing that prisoners have "a limited right to have erroneous information expunged from [their] prison file[s]" where they

---

[3] The court notes the plaintiff's allegation that the disciplinary board ultimately found her not guilty of the charge stemming from the August 2019 incident. (Doc. No. 1 at 3.) However, the Disciplinary Report Hearing Summary attached to the complaint reflects some ambiguity on this point. On one hand, the "Committee Decision" area of the Summary is marked "N" for "Not Guilty." (Doc. No. 1-1 at 4.) On the other hand, handwritten narrative portions of the Summary state that "Hardy is found guilty of a Class A offense" (*id.* at 5) and "Due to the seriousness of the assault, offender Hardy poses a safety risk to the population[;] therefore admin[istrative] segregation [is] warranted at this time" (*id.* at 8). Given these statements, and the plaintiff's unambiguous request for the court to order the TDOC to expunge the "disciplinary infractions referenced in this complaint" (*see* Doc. No. 1 at 13), the court assumes for the purpose of initial review that the plaintiff has a disciplinary infraction to expunge.

"establish that: 1) certain information is in the prison file; 2) the information is false; and 3) the information is relied on to a constitutionally significant degree").

### III. Conclusion

For these reasons, the court concludes that the plaintiff states arguably non-frivolous individual-capacity claims against Defendants Fisher, Barlow, Tidwell, and Law for violating her rights to substantive due process and equal protection. These claims, along with the plaintiff's request for injunctive relief, will be referred to the Magistrate Judge for further proceedings consistent with the accompanying order.

_____
ALETA A. TRAUGER
United States District Judge